JPM:ALK/RCC
F. #2020R00471

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\*   SEPTEMBER 19, 2023   \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

JOHN WALDROP and
TONEY JONES,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 23-CR-378
(T. 16, U.S.C., §§ 1538(e) and 1540(b)(1); T. 18, U.S.C., §§ 371, 545, 981(a)(1)(C), 982(a)(2)(B), 982(b)(1), 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

Judge Rachel P. Kovner
Magistrate Judge Lois Bloom

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants

      1.    The defendant JOHN WALDROP was a resident of Cataula, Georgia.

      2.    The defendant TONEY JONES was a resident of Eufaula, Alabama. JONES was employed by the defendant JOHN WALDROP.

II.    Federal Laws Relating to Trafficking in Wildlife

      3.    The Convention on International Trade in Endangered Species of Wild Flora and Fauna ("CITES") was an international agreement among approximately 183 governments, including the United States, to protect fish, wildlife and plants that are, or may become, threatened with extinction. CITES established import and export restrictions to protect these species from overexploitation through international trade. The restrictions applied to live

and dead wildlife specimens, as well as the skins, parts and products made in whole or in part from listed species.

4. Under CITES, species were protected according to a classification system that included "Appendix I" and "Appendix II." Appendix I consisted of species threatened with extinction that were or may have been affected by trade. Appendix II of CITES consisted of the species that were not yet threatened with extinction but could have become threatened if trade in the species was not regulated. International trade in species listed in these appendices was monitored and regulated by permits and quotas.

5. The United States implemented CITES through the Endangered Species Act, Title 16, United States Code, Sections 1531 et seq. (the "ESA"). The ESA and its implementing regulations made it unlawful for anyone to engage in trade in any specimens contrary to CITES or to possess any specimens traded contrary to CITES. 16 U.S.C. § 1538(c)(1).

6. Prior to entry into the United States, all shipments of CITES Appendix I wildlife were required to have a valid CITES import permit issued by the United States CITES Management Authority, and all shipments of CITES Appendix I or II wildlife were required to have a valid export or re-export permit from the country of exportation. 50 C.F.R. § 23.20. International trade in a CITES-listed specimen without the required documentation was prohibited. 50 C.F.R § 23.13(a).

7. In addition to implementing CITES, the ESA prohibited the import, delivery, receipt, carriage, transportation and shipment, in foreign commerce and in the course of commercial activity, of any listed endangered species, and prohibited the violation of any

regulations pertaining to listed endangered or threatened species. 16 U.S.C. §§ 1538(a)(1)(A), 1538(a)(1)(E) and 1538(a)(1)(G).

8. The Migratory Bird Treaty Act (the "MBTA") made it unlawful to possess, offer to purchase, purchase, import, deliver for transportation, transport or cause to be transported, shipped, exported or imported any migratory bird without a permit. 16 U.S.C. §§ 703 and 707; 50 C.F.R. § 21.10.

9. Under Title 50 of the Code of Federal Regulations, importers and their agents were required to declare any importation of wildlife into the United States on a Declaration for Importation or Exportation of Wildlife. 50 C.F.R. § 14.61. Importers and their agents were further required to obtain clearance from an officer of the U.S. Fish and Wildlife Service (the "USFWS") for any importation of wildlife and to make all relevant shipping documents and permits, and the wildlife itself, available to an officer of the USFWS. 50 C.F.R. § 14.52. Importers and their agents were further required to mark any importation of wildlife with an accurate list of each species' scientific name. 50 C.F.R. § 14.81.

III. The Smuggling Scheme

10. In or about and between January 2016 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN WALDROP and TONEY JONES, together with others, participated in a scheme to smuggle wildlife into the United States. Specifically, WALDROP and JONES worked together to smuggle hundreds of preserved birds, a significant portion of which were protected species under CITES and/or the MBTA, as well as preserved eggs and other preserved wildlife, into the United States. WALDROP and JONES regularly used shipping addresses belonging to JONES and others, including a co-conspirator whose identity is known to the Grand

Jury ("Co-Conspirator-1"), but the illegally imported preserved wildlife ultimately went to a residence in Cataula, Georgia, owned by WALDROP.

11. The defendants JOHN WALDROP and TONEY JONES created accounts on websites including eBay, Etsy and PayPal, which they used to negotiate and effect the purchase and importation of preserved wildlife, including protected bird species, eggs and other wildlife, from dealers located in other countries.

12. The defendants JOHN WALDROP and TONEY JONES made requests to wildlife dealers for particular bird species, including species that were protected under CITES and the MBTA. In turn, those dealers notified WALDROP and JONES when a bird of that species had been killed and was available for purchase. WALDROP and JONES also communicated regularly with dealers about new birds available for purchase.

13. The defendants JOHN WALDROP and TONEY JONES imported preserved birds, eggs and other wildlife into the United States through John F. Kennedy International Airport in Jamaica, Queens, and other airports, without declaring them or obtaining the permits required under CITES, the ESA, the MBTA and U.S. import regulations.

14. The estimated market value of the wildlife purchased, transported, imported and possessed by WALDROP and JONES from foreign dealers was at least $1,200,000.

COUNT ONE
(Conspiracy to Smuggle Goods into the United States)

15. The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

16. In or about and between January 2016 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JOHN WALDROP and TONEY JONES, together with others, did knowingly and willfully conspire to import and bring into the United States merchandise, to wit: preserved wildlife, contrary to Title 18, United States Code, Section 545 and 50 C.F.R. §§ 14.52, 14.61, 14.81, 21.10, 23.13, 23.20, 23.25 and 23.5.

17. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants did commit and cause the commission of, among others, the following:

OVERT ACTS

(a) On or about January 1, 2016, WALDROP imported five birds from Italy to the United States, to wit: one Squacco heron; one black-crown heron, which was protected under the MBTA; one Eurasian hoopoe, which was protected under the MBTA; one common pochard, which was protected under the MBTA; and one green-winged teal, which was protected under the MBTA, without declaring any of the birds to the USFWS or obtaining the required permits.

(b) On or about January 27, 2016, WALDROP imported eleven birds from the United Kingdom to the United States, to wit: one great spotted woodpecker, which was protected under the MBTA; one Northern lapwing, which was protected under the MBTA; one Wilson's snipe, which was protected under the MBTA; one golden-crowned kinglet, which was protected under the MBTA; one European stonechat; one European starling; one Eurasian jay; one gray partridge; one white-throated dipper; one water rail; and one canary, without declaring any of the birds to the USFWS or obtaining the required permits.

(c) On or about September 29, 2016, JONES imported one hawk, which was protected under CITES, from Germany to the United States without declaring the hawk to the USFWS or obtaining the required permit.

(d) On or about February 11, 2017, JONES purchased a great grey owl, which was protected under CITES, on Etsy from a wildlife dealer in Russia.

(e) On or about August 17, 2017, JONES purchased a Boreal owl, which was protected under CITES, on Etsy from a wildlife dealer in Russia.

(f) On or about September 18, 2018, WALDROP purchased an Elenora's falcon, which was protected under CITES, on eBay from a wildlife dealer in Italy.

(g) On or about October 4, 2018, JONES imported one Muscovy duck to the United States from Italy without declaring the duck to the USFWS or obtaining the required permit.

(h) On November 20, 2018, JONES requested a Roseate Spoonbill, which was protected under the MBTA, from a wildlife dealer in Uruguay.

(i) On or about April 18, 2019, JONES replied to an email from a wildlife dealer in Malta that contained photographs of recently killed birds for sale and informed the dealer that he wished to purchase two of the birds for $2,400 total.

(j) On or about July 23, 2019, JONES sent an email to a wildlife dealer that read: "Last package on it[s] way from New York.  Mail the other one thanks t."

(k) On or about September 2, 2019, WALDROP sent an email to a wildlife dealer in Oregon asking the dealer to use an email address associated with JONES to communicate with WALDROP.

(l) On or about September 5, 2019, JONES sent an email to a wildlife dealer that read: "Last parcel on way from [N]ew York you can mail next anytime. Waiting for photos. Hope all is well with you. Many thanks t."

(m) On or about February 29, 2020, JONES requested two African Hawk-Eagles, two Beaudouin Snake-Eagles, one Brown Snake-Eagle and one Banded Snake-Eagle, all of which were protected under CITES, from a wildlife dealer in Malta.

(n) On or about and between March 12, 2020, and March 15, 2020, JONES responded to emails from a wildlife dealer located in Malta containing photographs of recently killed birds for sale with checkmarks indicating which birds WALDROP and JONES wished to purchase.

(o) On or about April 29, 2020, JONES paid a wildlife dealer in Hungary $709.85 by PayPal for a Levant sparrowhawk, which was protected under CITES.

(p) On or about May 15, 2020, JONES caused a wildlife dealer to send one Levant sparrowhawk from Hungary to Queens, New York for delivery to Co-Conspirator 1 in Hamilton, Georgia.

(q) On or about April 23, 2020, JONES paid a wildlife dealer in Italy $392.60 by PayPal for a grasshopper buzzard-hawk, which was protected under CITES and the MBTA.

(r) On or about May 21, 2020, JONES caused a wildlife dealer to send one grasshopper buzzard-hawk from Italy to Queens, New York for delivery to Co-Conspirator 1 in Hamilton, Georgia.

(s) On or about July 10, 2020, WALDROP imported two packages containing 23 preserved bird eggs to the United States from Iceland without declaring the eggs to USFWS or obtaining the required permits.

(t) On or about December 10, 2020, WALDROP caused an individual based in Russia to send six certificates of origin relating to preserved birds WALDROP had previously purchased, which had been transported through Queens, New York for delivery to WALDROP.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNTS TWO THROUGH FOUR
(Smuggling Goods into the United States)

18. The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

19. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants JOHN WALDROP and TONEY JONES, together with others, did knowingly, intentionally and fraudulently import and bring into the United States merchandise, to wit: wildlife, contrary Title 16, United States Code, Sections 703 and 1538(e), and Title 50, Code of Federal Regulations, Sections 14.52, 14.61, 14.81, 21.10, 23.13(a) and 23.20.

| COUNT | APPROXIMATE DATE | MERCHANDISE |
|---|---|---|
| TWO | May 15, 2020 | One Levant sparrowhawk |
| THREE | May 21, 2020 | One grasshopper buzzard-hawk |
| FOUR | July 22, 2020 | Two murre eggs, two gull eggs and one unidentified egg |

(Title 18, United States Code, Sections 545, 2 and 3551 et seq.)

## COUNTS FIVE THROUGH SEVEN
(Endangered Species Act)

20. The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

21. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants JOHN WALDROP and TONEY JONES, together with others, did knowingly and intentionally import wildlife and fail to file one or more declarations and reports deemed necessary by the Secretary of the Department of Interior to facilitate enforcement of Title 16, United States Code, Chapter 35, to wit: Declarations for Importation or Exportation of Wildlife, CITES permits and MBTA permits:

| COUNT | APPROXIMATE DATE | WILDLIFE LACKING REPORT AND DECLARATION |
|---|---|---|
| FIVE | May 15, 2020 | One Levant sparrowhawk |
| SIX | May 21, 2020 | One grasshopper buzzard-hawk |
| SEVEN | July 22, 2020 | Two murre eggs, two gull eggs and one unidentified egg |

(Title 16, United States Code, Sections 1538(e) and 1540(b)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT EIGHT
(Money Laundering Conspiracy)

22. The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

23. In or about and between January 2016 and August 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN WALDROP and TONEY JONES, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds from

10

one or more places in the United States to and through one or more places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: smuggling, in violation of Title 18, United States Code, Section 545, contrary to Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

30. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense, including but not limited to approximately 779 bird mounts and 2,594 eggs seized from JOHN WALDROP on or about October 28, 2020, November 17, 2021 and November 18, 2021 from the premises located at 2224 and 2100 Hamilton Mulberry Grove Road in Cataula, Georgia (the "Seized Assets").

31. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

11

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH FOUR

32. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Two through Four, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 982(a)(2)(B), which requires any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds the person obtained directly or indirectly as the result of such offenses; and (b) Title 18, United States Code, Section 545, which requires any person convicted of such offenses to forfeit any merchandise introduced into the United States in violation of such offense, or the value thereof, including but not limited to the Seized Assets.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 545, 982(a)(2)(B) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT EIGHT

34. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Eight, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the Seized Assets.

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

By T. Kristin Jun, A.U.S.A.
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Ryan Gerry For:
TODD KIM
ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCE DIVISION

F.#: 2020R00471
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

JOHN WALDROP AND TONEY JONES,

Defendants.

## INDICTMENT

(T. 16, U.S.C., §§ 1538(e), 1540(b)(1); T. 18, U.S.C., §§ 371, 545, 981(a)(1)(C), 982(a)(2)(B), 982(b)(1), 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____ [signature]
                                                        *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____
                                                        *Clerk*

Bail, $ _____

_____

*Anna L. Karamigios, Assistant U.S. Attorney (718) 254-6225*
*Ryan C. Connors, Department of Justice Trial Attorney (202) 305-0363*